IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>AARON GARCIA,<br><br>                    Defendant. | 8:16CR269<br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the Court on the Findings and Recommendations and Order (Filing Nos. 25, 27) of the magistrate judge[1] recommending that the Court deny defendant Aaron Garcia's ("Garcia") Motion to Suppress (Filing No. 17). Garcia seeks to suppress the evidence derived from the search of a vehicle in which Garcia was a passenger on July 12, 2016. Garcia objects to the Finding and Recommendation (Filing No. 28), arguing the magistrate judge erred in concluding Douglas County, Nebraska, Sheriff's Deputy Andrew Woodward ("Deputy Woodward") had "reasonable suspicion to detain Aaron Garcia for the purpose of deploying his drug dog after the traffic stop had ended." Garcia's objection is overruled and his Motion is denied.

**I.   BACKGROUND**

The relevant facts of this case are not in dispute. On July 12, 2016, at approximately 11:30 p.m., Garcia was a passenger in a sport utility vehicle driven by his sister, Karina Garcia ("Karina"). They were traveling east on Interstate 80 in Douglas County, Nebraska, with two friends. The group of friends had visited Las Vegas, Nevada, for a couple of days and was returning home to Chicago, Illinois, when Deputy Woodward, a member of the K-9 interdiction unit, stopped Karina for speeding. As he approached Karina's vehicle, Deputy Woodward noticed a blanket covering items in the

---

[1] The Honorable F.A. Gossett, III, United States Magistrate Judge for the District of Nebraska.

cargo area. When Karina rolled her window down, Deputy Woodward "noticed a very heavy odor of air-freshener" from multiple air fresheners and "observed two individuals lighting up cigarettes."

Deputy Woodward asked Karina to exit the vehicle and placed her in the front seat of his cruiser to interview her. Deputy Woodward asked Karina about her itinerary and how she knew her passengers. Deputy Woodward thought Karina "seemed overly nervous" and was uncertain in her answers. He thought the group's itinerary was suspicious because they travelled four days "to stay two nights and one day" in "a city so far away."

Deputy Woodward then briefly interviewed the passengers and obtained their identification so he could "run a wants and warrants on all four of the occupants." When his records checks returned nothing significant, Deputy Woodward returned all of the paperwork to Karina and gave her a verbal warning for speeding. After asking Karina some questions about whether she had drugs, stolen property, or cash in the vehicle, Deputy Woodward asked for consent to search, which Karina denied. Karina told him she wanted to leave so she could use the restroom.

Deputy Woodward advised Karina she was not free to leave and that he was going to deploy his narcotic-sniffing dog, Loki, around the vehicle. Loki indicated to the presence of narcotics at the driver's side rear wheel well. A search of the back of the vehicle revealed three pounds of methamphetamine. All four occupants were arrested. Garcia—though advised of his rights—made some incriminating statements.

On November 10, 2016, Garcia moved to suppress the evidence derived from the search of Karina's vehicle. The magistrate judge held an evidentiary hearing at which only Deputy Woodward testified. Deputy Woodward explained his reasons for detaining Garcia and deploying Loki. The magistrate judge admitted in evidence a video and audio recording of the stop taken from a camera in Deputy Woodward's cruiser. At the close of

the hearing, the magistrate judge found Deputy Woodward credible and concluded he had reasonable suspicion to detain Garcia after completing the traffic stop. The magistrate judge recommends this Court deny Garcia's Motion to Suppress. Garcia challenges the magistrate judge's conclusion and recommendation.

## II. DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 636(b)(1), the Court may designate a magistrate judge to conduct an evidentiary hearing and submit "proposed findings of fact and recommendations for the disposition" of a motion to suppress. The Court then must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

### B. Reasonable Suspicion

Garcia does not question the validity or length of the traffic stop itself. Nor does he challenge the magistrate judge's factual findings and credibility determination. The sole question before the Court is whether "Deputy Woodward possessed the requisite reasonable suspicion to detain Aaron Garcia for the purpose of deploying his drug dog after the traffic stop had ended." The Court concludes that he did.

The Fourth Amendment to the U.S. Constitution protects individuals against unreasonable searches and seizures" by the government. U.S. Const. amend. IV. "[I]ts protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "[I]n such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id. (quoting United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

"An officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016). Absent reasonable suspicion, however, an officer may not routinely "extend an otherwise-completed traffic stop . . . to conduct a dog sniff." *Rodriguez v. United States*, 575 U.S. ___, ___, 135 S. Ct. 1609, 1614 (2015).

"[T]he concept of reasonable suspicion is somewhat abstract" and elusive. *Arvizu*, 534 U.S. at 273. "A law enforcement officer has reasonable suspicion when the officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008) (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994).

Here, the totality of the circumstances supports Deputy Woodward's reasonable suspicion of criminal activity. At the suppression hearing, Deputy Woodward testified several factors made him suspect the group he stopped may have been trafficking illegal drugs. As he approached the vehicle, Deputy Woodward noticed a blanket covering the items in the back. When Karina opened her window, Deputy Woodward detected "a very heavy odor of air-freshener" and saw two of the passengers light cigarettes. Based on his training and experience, Deputy Woodward suspected the group might have been trying to physically hide illegal drugs with the blanket and mask their odor with multiple air

fresheners and lit cigarettes. *See*, *e.g.*, *United States v. Bloomfield*, 40 F.3d 910, 918-19 (8th Cir. 1994) (en banc) (explaining an officer is "able to attach significance to the strong 'masking odor' based on his experience and training in drug interdiction").

Deputy Woodward further testified that, although the group's answers to his questions about their travel plans were fairly consistent, Karina "seemed overly nervous" and "was very unsure of her answers." *See*, *e.g.*, *id.*; *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."). He also found the group's travel itinerary suspicious because they made a "last-second decision" to drive to Las Vegas and were driving several thousand miles and spending four days in the car to spend such a short time in a city known as a source for illegal drugs. *See*, *e.g.*, *United States v. Carpenter*, 462 F.3d 981, 987 (8th Cir. 2006) (concluding "nervous" behavior and "unusual and suspicious" travel plans provided reasonable suspicion to justify the brief detention of a traveler to conduct a dog sniff). Given the totality of the circumstances in this case, the Court agrees with the magistrate judge that Deputy Woodward had sufficient reasonable, particularized suspicion of illegal drug-trafficking to briefly detain Garcia after the traffic stop and deploy Loki around the vehicle.[2] *See*, *e.g.*, *id.*; *Bloomfield*, 40 F.3d at 918-19.

Garcia argues Deputy Woodward did not have reasonable suspicion because two of the factors the magistrate judge relied on "are nothing more than evidence of innocent and responsible travel." In Garcia's view, the travelers could have used the blanket to protect their valuables from thieves and could have needed the air fresheners to mask the odor of four adults travelling thousands of miles by car in July. As for Karina's nervous behavior, Garcia attributes that to her need to use the restroom. Garcia's innocent explanations are reasonable, but his "divide and conquer analysis" is precluded by *Terry v. Ohio*, 392 U.S. 1 (1968). *Arvizu*, 534 U.S. 274-75.

---

[2] Like the magistrate judge, the Court does not rely on Karina's hesitance when asked about the presence of methamphetamine in the vehicle.

5

As Garcia acknowledges, the Supreme Court and Eighth Circuit have repeatedly held that a series of acts that may appear innocent by themselves can, when taken together, create reasonable suspicion and warrant further investigation. *See*, *e.g.*, *id.*; 534 U.S. 274; *Sokolow*, 490 U.S. at 9 ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion."); *Carpenter*, 462 F.3d at 986 ("Factors consistent with innocent travel, when taken together, can give rise to reasonable suspicion, even though some travelers exhibiting those factors will be innocent."). What's more, "the police possess specialized law enforcement experience and thus may draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous." *United States v. Chappell*, 779 F.3d 872, 878 (8th Cir. 2015) (quoting *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005)). Such is the case here.

### III.   CONCLUSION

Deputy Woodward had reasonable suspicion to detain Garcia and deploy Loki after completing the traffic stop. Accordingly,

IT IS ORDERED:
1. Defendant Aaron Garcia's objection (Filing No. 28) to the magistrate judge's Findings and Recommendation is OVERRULED.
2. The magistrate judge's Findings and Recommendation (Filing Nos. 25, 27) are ACCEPTED.
3. Garcia's Motion to Suppress (Filing No. 17) is DENIED.

Dated this 24th day of January, 2017.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge

6